```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA

                    Case No. 11-80206-CR-DMM

UNITED STATES OF AMERICA,      )
                               )
     GOVERNMENT,               )
                               )
     -v-                       )
                               )
LARRY D. AUSTIN, JR.,          )
                               )
     DEFENDANT.                )    West Palm Beach, Florida
                               )    July 12, 2012
_____)


              TRANSCRIPT OF SENTENCING PROCEEDINGS

           BEFORE THE HONORABLE KENNETH L. RYSKAMP

                    UNITED STATES DISTRICT JUDGE


Appearances:

FOR THE GOVERNMENT            John C. McMillan, AUSA
                              United States Attorney's Office
                              500 South Australian Avenue
                              Suite 400
                              West Palm Beach, FL 33401

FOR THE DEFENDANT             Robert E. Adler, AFPD
                              Federal Public Defender's Office
                              450 Australian Avenue, Suite 500
                              West Palm Beach, FL 33401

Reporter                      Stephen W. Franklin, RMR, CRR, CPE
(561)514-3768                 Official Court Reporter
                              701 Clematis Street
                              West Palm Beach, Florida  33401
                              E-mail:  SFranklinUSDC@aol.com
```

```
1              (Call to the order of the Court.)
2                 Next case is United States versus Austin.
3                 All right.  I've read the statement from Mr. Austin.
4       Has counsel stated their appearances?
5                 MR. ADLER:  Not yet, Judge.
6                 MR. McMILLAN:  Good afternoon, Your Honor.  John
7       McMillan on behalf of the United States.
8                 MR. ADLER:  Good afternoon, Judge.  Robert Adler,
9       Assistant Federal Public Defender, on behalf of Larry Austin.
10                THE COURT:  All right.  You've read the presentence
11      report, and there are no objections?
12                MR. ADLER:  That's correct, Judge.
13                THE COURT:  And everyone agrees that the proper
14      guideline is 188 to 235 months?
15                MR. McMILLAN:  The United States does, Your Honor.
16                MR. ADLER:  Yes, sir.
17                THE COURT:  All right.  You may proceed with your
18      allocution, Mr. Adler.
19                MR. ADLER:  Your Honor, I would suggest to the Court
20      that a sentence of 188 months is sufficient but not greater
21      than necessary to effectuate the goals of Section 3553(a) for
22      a number of reasons.
23                Mr. Austin is a young man who, at age 25,
24      unfortunately has little education or training.  He attended
25      school only to the ninth grade, and as I'm sure the Court has
```

1    noted, he has had an extensive history of involvement with
2    drugs, drug sales and drug usage.
3            On the other hand, his characterization as an armed
4    career criminal has resulted in a significant increase in what
5    otherwise would have been his sentence, and it does that
6    through the bumping up to a level 34 by the application of the
7    Armed Career Criminal Act.  But for the application of the
8    Armed Career Criminal Act, Mr. Austin would have had his base
9    offense level or total -- his offense level, before
10   consideration of acceptance, reduced from 34 to 30, and he
11   would have been looking at a sentence of 130 to 162 months.
12           And I point this out because I would suggest it's
13   very significant, in that the Armed Career Criminal Act in and
14   of itself gives a rather significant increase for a
15   Defendant's criminal history.  You know, in other words, but
16   for the application of that act as a Criminal History
17   Category 6, he would have been looking at a lower sentence
18   under the guidelines.  For that reason, I would suggested to
19   the Court that a sentence of 188 months is appropriate.
20           In addition to that -- and perhaps this is even a
21   more significant reason -- I think the Court can take into
22   account both the age and the background of the individual,
23   which comes from a situation where he -- you know, he didn't
24   get the nurturing, didn't get the education to put himself in
25   a position to do the kind of things that we would expect from

```
 1   someone in society.  But even though he has an extensive
 2   record, the longest period of incarceration that he ever
 3   received was I believe only one sentence of 18 months in
 4   prison.
 5             THE COURT:  That's part of the problem.
 6             MR. ADLER:  Well, I think that's part of the problem,
 7   I agree with Your Honor.  And because of that, he's never been
 8   in a situation where he has had enough of a sentence to
 9   reflect upon his wrongdoing or to receive the type of
10   educational and vocational training that he needs to set him
11   on a different path.
12             So the question becomes, okay, he's got a bad record,
13   but do you take someone at age 25, who has only been to prison
14   once for a period of 18 months, and say it's not enough to
15   bump him up to 15 years?  I would suggest to the Court that
16   that is a drastic increase, which, again, putting aside the
17   effect of the actual increase under the guidelines by the
18   application of the Armed Career Criminal Act, that that
19   increase from someone who's never really been to prison
20   before, 18 months to 15 years, that in and of itself will give
21   him the opportunity for a number of things.
22             First and foremost, it will take him out of society
23   and give him time to reflect on what happens to someone who
24   engages in serious wrongdoing.  He's never been given that
25   type of punishment in any type of degree before.  This is
```

1    different from a case with someone with a significant record
2    who has been to state prison before on multiple occasions.
3    Your Honor has seen that, I'm sure, on many occasions.  That
4    has never happened with Mr. Austin.
5             The 188 month-sentence in this case will first get
6    him a GED.  And the reason why he'll get a GED is because, as
7    expressed in his letter to the Court, he knows that he has to
8    get education and training in order to make his way in
9    society.  But also in the security classification within the
10   Bureau of Prisons, if you don't have a GED that does bump up
11   your security score, which means that's going to affect where
12   you're housed.  The lower your score, the more opportunities
13   you'll have, the better off you're going to be.  It's a
14   tremendous incentive to get your GED in prison.  I don't know
15   if I've ever had a client who went to the BOP and did not get
16   their GED.
17            In addition, not only will he have the opportunity
18   and have the motivation to further his education, he'll have
19   the opportunity and the motivation to get some training,
20   training and counseling.  They have a variety of different
21   types of occupational training that he can undertake, he'll be
22   able to work, and he'll be able to go through other types of
23   psychological and basic motivational programs that they have
24   within the prison.  Now, will he take advantage of that?  No
25   one knows.  But he's young enough that he can, and he'll have

```
 1   the time to do it, because he'll be bored.  He'll want to do
 2   this.
 3            I had a client who called me this week who I
 4   represented over 15 years ago who was an armed career criminal
 5   who served a similar sentence in prison.  He called me because
 6   he wanted me to file a motion for early termination of his
 7   supervision.  He had been out for four years, he's married, he
 8   has a good job.  While he was in prison he got his GED, he got
 9   additional education, got his AA, he got occupation training,
10   he got a variety of different types of awards, and basically
11   he did turn himself around in a tremendous way.  He was a
12   young man just like Mr. Griffin.  I think if he can do it and
13   others who I've represented in the past have done it,
14   Mr. Griffin can --
15            THE COURT:  Mr. Austin, you mean?
16            MR. ADLER:  Excuse me, Mr. Austin.
17            I would also note to the Court that this is not
18   reflected in the PSI, but the Government knows about that, is
19   while Mr. Austin's been incarcerated, there was a homicide
20   that he had nothing to do with that, but he knew and heard
21   from individuals relating to that, and he did cooperate with
22   the Government, provided some information that ultimately they
23   really didn't need, but he did this unsolicited.  I think the
24   Government found the information to be truthful, and he
25   offered to assist them in regard to that.
```

```
 1              Now, of course, the Court can say he's trying to do
 2   everything he can to turn himself -- you know, to basically
 3   get a lighter sentence, but that reaching out I would suggest
 4   to the Court is significant also, because it shows a change of
 5   mind, a change of mind for a hosts of reasons.  It could be
 6   just the amount of time that he's facing, but it also, I
 7   think, suggests it reflects a change of mind that he has to
 8   start leading a different kind of life.  He has to do
 9   something so that he'll get out of prison and be able to do
10   something productive.
11              And I think for all of those reasons, a sentence at
12   the low end of the guideline is appropriate.
13              THE COURT:  Well, let me ask you some questions here.
14              First of all, are some of the people here in the
15   courtroom here on his behalf?
16              MR. ADLER:  Oh, yes.  This is all family.
17              THE COURT:  Well, are these some of the mothers of
18   his children and his children?
19              MR. ADLER:  Well, yes.  And, Judge, in terms of his
20   record, I know it looks bad because he has the batteries on
21   there.
22              THE COURT:  It seems like he's been battering these
23   women, he's been violent to them, and they're here to support
24   him?
25              MR. ADLER:  They are, Judge.
```

```
 1              THE COURT:  I haven't seen a single letter of
 2   support.  I haven't seen anything.  In fact, I've looked
 3   through this rather lengthy presentence report, and I can't
 4   find one redeeming feature in this man's life, one thing, one
 5   thing that you could point to to say, well, this is a good
 6   thing.  I mean, from the age of 11, he has a consistent course
 7   of crime and beating up on women, fathering children, six
 8   children with four different women, never married, he's 25
 9   years old.
10              MR. ADLER:  And some of those women, in fact, some of
11   the very women that he was charged with battery, they are
12   here, and they had this tumultuous relationship, and it has
13   led to where he is today.  And I know what the Court is
14   saying, but they are here because they do see the good
15   qualities in him.  And for the very things that the Court has
16   talked about, the fact that he hasn't done anything productive
17   up to now, that all of that now is coming to roost in a way
18   that it never came to roost before.
19              I mean, before it was sort of, okay, I do something,
20   I go to jail, I go to jail for 60 days, I go to jail for 180
21   days.  The worst that ever happened to me, I went to jail for
22   18 months and got out.  But now that has stopped, and I would
23   suggest to the Court that it's sufficient to say, okay, you
24   have this terrible record, you've done these bad things, you
25   have to turn yourself around, and that 15 years is enough time
```

```
 1    to make you reflect and make you make those changes and to
 2    give you the opportunity to do so.
 3           Because remember, not only will he have all that time
 4    in prison, but he'll have substantial supervised release when
 5    he gets out, where he can go back to prison if he doesn't turn
 6    his life around.  And when you're 25, 15 years -- I mean, 15
 7    years is a long time, but I can't imagine what it would have
 8    been like at age 25 to have someone tell me I'm facing 15
 9    years, I'm going to go to prison for 15 years.  I think about
10    all the things that I did between the ages of 25 and 40 that
11    I'm going to miss out on, and I think that is sufficient time
12    to accomplish all the things the Court wants to accomplish,
13    both for Mr. Austin and for the protection of society.
14           THE COURT:  It just seems like this court ends up as
15    a cleanup hitter for all of the mistakes that were made in
16    state court.  I mean, this man should have been stopped a long
17    time ago and he wasn't.  And so he figured, it isn't serious,
18    so I do a little time.  And now suddenly he's going to turn
19    his life around because he's facing something serious.
20           MR. ADLER:  And as I've argued, Judge, I think that's
21    what makes this case different from some of the other
22    individuals in the past with the similar type of histories.
23    Those individuals --
24           THE COURT:  I don't think I've ever seen anything
25    similar to this.
```

```
 1              MR. ADLER:  Well, it's a lot of points, Judge, but
 2   we've had --
 3              THE COURT:  Well, he's got 30 points, and if they
 4   didn't discount the ones that were over 10 years, and if they
 5   didn't discount all of the nol. prosses because of a bigger
 6   package, he'd have 50 points.
 7              MR. ADLER:  He would.  And if he had 50 -- if he had
 8   prior prison sentences discounted, I think that would be
 9   supportive of what -- where the Court may be, you know, where
10   the Court is thinking.  I think it's dramatically different
11   when you have someone before you who has been given a heavy,
12   you know, whack in the past, who has done those five or six
13   years and come out and said, okay, I'm going to -- I didn't
14   learn from five years in prison.  That is not the case with
15   Mr. Austin.
16              Yes, you are the cleanup hitter here, but I suggest
17   that the whack that you're going to give him should have been
18   a lesser whack in the state system.  He perhaps should have
19   gotten a four- or five-year sentence before and should have
20   had educational and vocational training and should have had
21   intense supervision, and now he's going to get that through a
22   15-year sentence hopefully, followed by years of supervision.
23              THE COURT:  All right.  Does the Defendant wish to
24   address the Court?
25              MR. ADLER:  I don't know if he has anything
```

```
 1   additional to say to his written statement.
 2           No, sir.
 3           THE COURT:  All right.  I'll hear from the
 4   Government.
 5           MR. McMILLAN:  Your Honor, we would respectfully
 6   defer to the Court, except to posit the question as to I
 7   wonder what the Defendant told all the other judges he
 8   appeared before since he's been 11 years old.
 9           Thank you.
10           THE COURT:  It's difficult to comprehend the depth of
11   the prior violations of this defendant.  I mean, this
12   presentence report went on and on, and most of it is involved
13   in one crime after another.  And I -- I read his letter.  It
14   sounds like he wants to turn his life around.
15           The difficult thing that a court has to consider is
16   exactly how much time it's going to take to turn somebody's
17   life around.  You'd like to do it at the lowest amount
18   possible.  I will say that the first time I read this report I
19   said I wouldn't hesitate a moment in giving him the maximum.
20   I mean, he deserves the maximum.  He is a young man who could
21   profit from some education.  Whether he'll turn his life
22   around, I don't know.
23           Under these circumstances, and with the -- all of the
24   offenses that weren't even counted because they're over 10
25   years, and all the other deals he made to get others
```

1    discharged that didn't create points, he still ends up with 30
2    criminal history points.  I'm going to sentence him at the
3    middle of the guideline range.
4         The Court has considered the statements of all
5    parties, the presentence report, which contains the advisory
6    guidelines and the statutory factors.  Based upon the
7    Defendant's extensive criminal record, the sentence will be
8    imposed in the middle of the guideline range.
9         It is the finding of the Court the Defendant is not
10   able to pay a fine.
11        It is the finding of the Court that the Defendant,
12   Larry Donald Austin, Jr., is committed to the Bureau of
13   Prisons to be imprisoned for 214 months as to counts 4 and 5,
14   to be served concurrently.  Upon release from imprisonment,
15   the Defendant shall be placed on supervised release for a term
16   of five years as to counts 4 and 5, to run concurrently.
17        Within 72 hours of release from custody of the Bureau
18   of Prisons, the Defendant shall report in person to the
19   probation office in the district to which the Defendant is
20   released.
21        While on supervised release, the Defendant shall not
22   commit any crimes, shall be prohibited from possessing a
23   firearm or other dangerous device, and shall not possess a
24   controlled substance, shall cooperate in the collection of
25   DNA, and shall comply with the standard conditions of

```
 1   supervised release, including the following special
 2   conditions:
 3          The Defendant shall participate in an approved
 4   treatment program for drug and/or alcohol abuse and abide by
 5   all supplemental conditions of treatment.  Participation may
 6   include inpatient and/or outpatient treatment.  The Defendant
 7   will contribute to the cost of services rendered based upon
 8   ability to pay or availability of third-party payment.
 9          The Defendant shall submit to a search of his person
10   or property, conducted in a reasonable manner and at
11   reasonable times by the U.S. probation officer.
12          The Defendant shall immediately pay the United States
13   a special assessment of $100 as to each of counts 4 and 5, for
14   a total of $200.
15          Now that sentence has been imposed, does the
16   Defendant or his counsel object to the Court's finding of fact
17   or the manner in which the sentence was pronounced?
18          MR. ADLER:  Your Honor, I would object to the
19   substantive reasonableness of the sentence.
20          THE COURT:  I'm sorry?
21          MR. ADLER:  I would object to the substantive
22   reasonableness of the sentence.
23          THE COURT:  Oh, all right.
24          MR. ADLER:  I would also ask the Court to recommend
25   that he be placed at Coleman, the Bureau of Prisons facility
```

```
 1   at Coleman.
 2            THE COURT:  I'll make that recommendation.
 3            You have a right to appeal the sentence imposed.  Any
 4   notice of appeal must be filed within 14 days after entry of
 5   judgment.  If you are unable to pay the costs of an appeal,
 6   you may apply for leave to appeal without payment of cost.  Do
 7   you understand that?
 8            THE DEFENDANT:  Yes.
 9            THE COURT:  All right.  Thank you.
10            MR. McMILLAN:  Your Honor, did the Court pronounce
11   the special assessment?  I'm sorry.
12            THE COURT:  $200.
13            MR. McMILLAN:  Thank you, Your Honor.
14            Oh, and, Your Honor, at this time, the Government
15   would move ore tenus to dismiss the remaining counts per the
16   plea agreement.
17            THE COURT:  It will be done in the J&C.
18            MR. McMILLAN:  Thank you, Your Honor.
19       (Proceedings concluded.)
20                        *  *  *  *
21
22
23
24
25
```

```
 1                       * * * * *
 2                         I N D E X
 3   Court's Imposition of Sentence                    12
 4                       * * * * *
 5                      E X H I B I T S
 6   (None.)
 7                       * * * * *
 8                        CERTIFICATE
 9       I, Stephen W. Franklin, Registered Merit Reporter, and
10   Certified Realtime Reporter, certify that the foregoing is a
11   correct transcript from the record of proceedings in the
12   above-entitled matter.
13       Dated this 28th day of SEPTEMBER, 2016.
14
15       /s/Stephen W. Franklin
         _____
16       Stephen W. Franklin, RMR, CRR
17
18
19
20
21
22
23
24
25
```